IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIGUEL A. SUAREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-cv-00637-NJR |
| | ) |
| RICHARD HARRINGTON, | ) |
| TIMOTHY R. VEATH, | ) |
| DAVID T. JOHNSON, and | ) |
| REBECCA A. COWAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Miguel Suarez is currently incarcerated at the Menard Correctional Center in Menard, Illinois, but was previously incarcerated at the Hill Correctional Center in Galesburg, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Suarez has filed a complaint pursuant to 42 U.S.C. § 1983 against a number of corrections officers at Menard, alleging that prison officials violated his constitutional rights by not giving him a disciplinary ticket fast enough after the underlying offense occurred and by "falsely imprisoning" him in segregation on a ticket that was ultimately expunged due to procedural problems. (*Id.* at 3-5)  Suarez seeks money damages. (*Id.* at 5.)

This matter is now before the Court for a preliminary review of Suarez's complaint pursuant to 28 U.S.C. § 1915A.  Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity."  During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if

the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

According to Suarez's complaint and the exhibits attached to it, Suarez was involved in an altercation with a prisoner at Hill Correctional Center on June 13, 2013. (Doc. 1 at 3.) He was transferred to Menard shortly after the fight, and he was then issued a disciplinary ticket for being involved in a "disturbance," assault, and impeding an investigation–all charges related to the altercation at Hill. (Doc. 1-1 at 9-10.) On July 4, 2013, prison officials held a hearing related to the ticket, and the adjustment committee (through Officers Veath and Johnson) found Suarez guilty. (*Id.*) As punishment, the committee ordered one year of "C Grade," one year of commissary restriction, and one year of segregation. (*Id.* at 10.) Harrington signed off on the committee's ruling on July 8, 2013, and a final report was sent to Suarez on July 12, 2013. (*Id.*)

On July 1, 2013, the same date that Suarez was served with the disciplinary ticket, Suarez filed a grievance with the Administrative Review Board, insisting that the ticket was given to him outside of the time period dictated by the Illinois code and must be expunged. (*Id.* at 1.) The grievance was received by the Board on July 22, 2013, and a little under one year later, the Board recommended that the disciplinary report be expunged and that Suarez's sanctions be "restored pending any subsequent discipline." (*Id.* at 4.) Suarez was released from segregation on July 23, 2014, and the ticket was expunged on August 19, 2014. (Doc. 1 at 4; Doc. 1-1 at 5.)

On June 8, 2015, Suarez filed a § 1983 action in this Court. (Doc. 1 at 1.)

## Discussion

Suarez's complaint focuses primarily on alleged due process violations related to the July 2013 adjustment committee ruling, so the Court will start there (**Count 1**). Whether any process

is due for a sanction of segregated confinement turns on the severity of the confinement: if the "period of segregated confinement is protracted or the conditions in segregation unusually harsh," some process is required; if not, no process is owed to a prisoner. *Toston v. Thurmer*, 689 F.3d 828, 832 (7th Cir. 2012). The punishment meted out in Suarez's case–nearly one year of time in segregation–is the kind of discipline that might trigger some Fourteenth Amendment due process requirements, so the question at screening becomes whether the process given Suarez was sufficient. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (noting that a "claim of confinement in segregation for 240 days may implicate a liberty interest"). Even when a liberty interest is triggered, prisoners should keep in mind that the process due under the Fourteenth Amendment to the United States Constitution is rather minimal–"[i]n the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by some evidence in the record." *Piggle v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003).

Suarez's due process claim in this case fails at the gate because he does not allege a violation of any these requirements. Rather, Suarez only points to a violation of the Illinois Administrative Code, specifically the section that compels prison officials to serve a ticket to an offender no more than eight days after the commission of the underlying offense. *See* ILL. ADMIN CODE tit. 20, § 504.30(f). But a run-of-the-mill violation of this section is no violation of the Fourteenth Amendment. *United States ex rel. Houston v. Warden, Stateville Corr. Ctr.*, 635 F.2d 656, 659 (7th Cir. 1980). To be sure, the only way that a delay in giving a ticket could possibly state a Fourteenth Amendment violation is if the delay was so egregious that it "might interfere with [a prisoner's] right to marshal the facts and prepare his defense." *See id.* (finding no due

process violation for two-month delay in providing ticket). Because Suarez does not allege anything like that here, **Count 1** must be dismissed without prejudice.

Suarez also hints at a violation of the Eighth Amendment related to his placement in segregation, stating that he was subject to "false imprisonment" in the prison's segregation unit because his disciplinary ticket was ultimately expunged (**Count 2**). The Seventh Circuit, over the dissent of Judge Easterbrook, has recognized that the Eighth Amendment could be violated when prison officials impose disciplinary sanctions against a prisoner that are not proportional to the conduct at issue, so long as the sanctions are objectively serious. *E.g.*, *Pearson v. Ramos*, 237 F.3d 881, 885 (7th Cir. 2001); *Chapman v. Pickett*, 586 F.2d 22, 28-29 (7th Cir. 1978); *Adams v. Carlson*, 488 F.2d 619, 635-36 (7th Cir. 1973). While this Court has its doubts as to whether this line of cases creates a claim for "false imprisonment" in segregation for a disciplinary ticket that was ultimately expunged, the Seventh Circuit acknowledged the possibility of such a claim once. In *Leslie v. Doyle*, 125 F.3d 1132, 1135 (7th Cir. 1997), the Court said that a prisoner might have a claim when he is placed in segregation for a long period by officials for "no offense at all"–as a "matter of mathematics," that would be "disproportionate." If all that was required for an Eighth Amendment cause of action was an allegation of objective harm, then Suarez's complaint might state a claim (at least at screening).

An objective allegation, however, is not enough on its own to state a constitutional claim; a prisoner must also "allege . . . that defendant-officials acted with deliberate indifference" towards the unconstitutional circumstances. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). Deliberate indifference is a robust state of mind requirement: to state a claim, a prisoner must allege that officials were criminally reckless–that they knew about the risk of harm but ignored it. *See*, *e.g.*, *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (plaintiff "must allege that

the defendants knew of and disregarded an excessive risk"); *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001) (inmate "must allege actual knowledge of impending harm easily preventable"); *Mueller v. Schnick*, 210 F.3d 375 (7th Cir. 2000) (affirming dismissal because plaintiff did not allege that official "knew of and disregarded an excessive risk"). What counts as indifference in the context of an Eighth Amendment claim like this one, where a prisoner alleges that he was in segregation longer than he should have been because the ticket was expunged, is not all that clear. These types of cases are rare, and many of the other circuits do not join the Seventh Circuit's view that a proportionality analysis even applies to prison discipline. *See Pearson*, 237 F.3d at 885 (proportionality has been "attenuated in recent decisions of the Supreme Court"); *Chapman v. Pickett*, 801 F.2d 912, 922-23 (7th Cir. 1986) (Easterbrook, J., dissenting) ("It is hard to imagine a rule more enervating than one that allows a prisoner to collect damages from his keepers on the ground that they should have returned him to the general population, after an admitted offense, in six months rather than nine, or perhaps in three weeks rather than four."). The best analogy might be to cases where a prisoner alleges his Eighth Amendment rights were violated because he was kept incarcerated after the date he should have been released; those cases say that indifference might exist when an official "knew of the prisoner's problem and thus of the risk that unwarranted punishment was being inflicted; that the official either failed to act or took only ineffectual action under the circumstances; and that there was a causal connection between the official's response to the problem and the unjustified detention." *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006).

Here, Suarez does not allege facts suggesting any indifference. He does not say that he told any of the defendants of the ticket problem during the hearing or after, nor does he say that any official took ineffectual action in response. Construing his complaint liberally, the best

Suarez alleges is that some of the defendants should have known about the problem, but a "should of" allegation does not make out a claim. *See*, *e.g.*, *Cavalieri v. Shepard*, 321 F.3d 616, 627 (7th Cir. 2003) (plaintiff "must allege that [official] knew of the risk," not just that he "should have known"); *Steidl v. Gramley*, 151 F.3d 739, 740-41 (7th Cir. 1998) (allegation that official "knew or should have known" of risk did "not state a claim under the Eighth Amendment," as the "Supreme Court expressly rejected the suggestion that a prison official violates the Eighth Amendment when he might have known of a risk of harm, or in any event should have known"); *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (affirming dismissal of claim at screening because party did not allege that any of the defendants "[knew] all the [risks]" and were "responsible for his cell assignment," and holding that a party is not "guilty of deliberate indifference even if they should have known about the risk, that is, even if they were negligent"). Because Suarez has not alleged any indifference by officials related to his confinement and the ticket problem, **Count 2** must be dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's complaint (Doc. 1) is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed with this case, Plaintiff shall file his First Amended Complaint on or before **August 11, 2015**. He should label the form First Amended Complaint, and he should use the case number for this action. For Count 1, Plaintiff should include any allegations that infer that the named defendants deprived him of his federal due process rights in connection with the disciplinary hearing. For Count 2, Plaintiff should include any allegations that infer that the named defendants acted with deliberate indifference concerning his allegedly wrongful confinement in segregation.

An amended complaint supersedes all previous complaints, rendering previous complaints void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to a complaint; thus, the First Amended Complaint must stand on its own.  Should the First Amended Complaint not conform to these requirements, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the amended complaint.  Failure to file a First Amended Complaint shall result in the dismissal of this action with prejudice.  Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).  No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.  In order to assist Plaintiff in preparing his amended complaint, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 7, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**